UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 12-20953-CIV-LENARD/O'SULLIVAN

MAZZINI TRADING, LTD,
a foreign corporation,

        Plaintiff,

vs.

QUALITY YACHTS, C.A.,
a foreign corporation,

        Defendant.
_____/

## DEFENDANT QUALITY YACHTS MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, QUALITY YACHTS, C.A., by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Procedure and Local Rule 7.5 of the Local Rules of the United States District Court for the Southern District of Florida, hereby files this Motion for Partial Summary Judgment on Damages, and states as follows:

### INTRODUCTION

In the above captioned action, Plaintiff MAZZINI TRADING, LTD. has initiated an action for breach of contract and seeks damages under the guise of liquidated damages or loss of use. However, these damages are not recoverable as a matter of law. It is unmistakably established hornbook law that penalty clauses are not enforceable. In addition, binding precedent mandates that loss of use of a non-commercial pleasure boat, such as the subject Vessel, is not a compensable item of damage. Accordingly, summary judgment is properly granted against MAZZINI's demand for loss of use and liquidated damages.

**PROCEDURAL HISTORY AND BACKGROUND**

Plaintiff MAZZINI TRADING, LTD. has initiated the present action against QUALITY YACHTS for a purported breach of a settlement agreement concerning the subject vessel, "LADY MANUELA" – one 2007 62' Pershing motor yacht. The relationship between the Parties began in November 2006 when QUALITY YACHTS agreed to sell the subject motor yacht. Over the next several years, MAZZINI repeatedly brought it back to QUALITY YACHTS' to have repair/warranty work performed to the Vessel, although QUALITY YACHTS believes that this was largely due to suspected misuse of the vessel and a lack of maintenance. As a matter of good customer service, QUALITY YACHTS continually repaired the vessel in an effort to accommodate the customer, even if the desired repairs were not covered under the manufacturer's warranty.

In an effort to terminate their relationship, the Parties entered a settlement Agreement dated August 10, 2009. According to the Agreement, QUALITY YACHTS agreed to address one last checklist of issues/repairs which were enumerated in a list attached to the Agreement. In order to comport with the terms of the Agreement, QUALITY YACHTS completed the repairs by the middle of December 2009. Shortly thereafter, MAZZINI removed the Vessel from QUALITY YACHTS' facilities.

Over 24 months later, MAZZINI initiated an action against QUALITY YACHTS. MAZZINI contends that QUALITY YACHTS' breached its duty to timely repair the vessel, and/or otherwise comply with the Agreement. As set forth in the Complaint, MAZZINI now seeks damages for a loss of use, as well as liquidated damages; both of which are improper under the well-settled law set forth hereinafter.

In response thereto, QUALITY YACHTS now moves this Honorable Court to strike and/or limit MAZZINI's damages as a matter of law.  Specifically, QUALITY YACHTS respectfully requests that this Honorable Court enter an order that Plaintiff MAZZINI is not entitled to liquidated damages or loss of use damages.  This Motion should not be construed in any way as an admission of liability by QUALITY YACHTS, but rather as an attempt to narrow and define the issues before this Honorable Court.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff, MAZZINI TRADING, LTD. (hereinafter "MAZZINI") is a foreign company incorporated under the laws of the British Virgin Islands. *See* Certificate of Incorporation, attached hereto as Exhibit "A."

2. MAZZINI TRADING, LTD. is the owner of the vessel, "LADY MANUELA." *See* Complaint [DE 1], paragraph 2, attached hereto as Exhibit "B." *See* Transcript of British Registry, attached hereto as Exhibit "C."

3. "LADY MANUELA" is a 2007 62 foot Pershing motor yacht bearing hull identification number IT-ADRP6250F707.[1]  *See* Complaint [DE 1], paragraph 2, attached hereto as Exhibit "B."

4. The "LADY MANUELA" is registered as a "Pleasure Yacht" with the Virgin Islands Shipping Registry and bears British Official Number 740406.  *See* Transcript of British Registry, attached hereto as Exhibit "C."

5. Defendant, QUALITY YACHTS, C.A. (hereinafter "QUALITY YACHTS"), is a foreign company incorporated under the laws of Venezuela, and was the Pershing motor yacht dealer/distributor of the subject motor yacht.  *See* Complaint [DE 1], paragraph 3, attached

---

[1] Plaintiff's Complaint [DE 1] references hull identification number IT-ADRB6250F707, but Defendant assumes the slight discrepancy to be a scrivener's error.

hereto as Exhibit "B"; *see also* Agreement dated August 10, 2009, attached hereto as Exhibit "D."

6. On November 3, 2006, QUALITY YACHTS enter into an agreement to sell the subject motor yacht. *See* Contrato, attached hereto as Exhibit "E."

7. On August 10, 2009, the Parties entered into a settlement Agreement "to terminate the relationship derived from the Sales Agreement." *See* Complaint's [DE 1] Exhibit "B"; *See* also Agreement dated August 10, 2009, attached hereto as Exhibit "D."

8. According to the Agreement:

> 3) As of the date of the formal delivery of the boat to the Representative, the Representative shall have 15 calendar days to perform all the repairs and maintenance needed for the purpose of leaving all the components and mechanical parts of the aforementioned boat in working order to the list marked a attached to this agreement.  If during that time the pertinent repairs are not made, the Distributor shall incur a penalty of US$2,000 per calendar day to be paid to the Buyer, except in the event of force majeure or because during the estimated time the spare parts needed to that end could not be found available in any provider.

*See* Agreement, Clause 3, attached hereto as Exhibit "D."

9. According to the Agreement:

> 4) For the period specified in Clause Number 3 to start, the Buyer or a person designated by the Buyer must deliver both the aforementioned boat and the list of repairs to be performed to the Distributor. One such work is completed, the boat must be formally received in the performed repairs accepted by both parties. The boat must remain unused at the dock, whether at La Guaira or Puerto La Cruz, which location shall be determined later on, and in the event that there is a need to use it, they shall be done upon prior request made in writing by the Buyer and duly excepted by the Distributor, under the command of a captain with expertise. In the event the boat is used during this period, such. As well as the days of delivery shall not count for the period specified In Clause Number 3. Should these requirements not be met, it is understood that the 15 calendar days shall start to be counted again from the moment the boat is formally delivered back to the Distributor for repairs.

*See* Agreement, Clause 4, attached hereto as Exhibit "D."

10. Attached to the Agreement dated August 10, 2009, is a document titled "Pershing 62" that has enumerated a list of items to be addressed. *See* Agreement dated August 10, 2009, attached hereto as Exhibit "D."

11. On February 15, 2012, MAZZINI initiated the above styled action against QUALITY YACHTS. *See* Complaint [DE 1], attached hereto as Exhibit "B."

12. As set forth in the Complaint, MAZZINI alleges that QUALITY YACHTS "breached its duty to timely repair the vessel or otherwise comply with the contract attached as Exhibit "A."" *See* Complaint [DE 1], paragraph 12, attached hereto as Exhibit "B."

13. In the *ad damnum* clause of the Complaint, MAZZINI seeks "judgment against the Defendant for damage, loss of use, liquidated damages, pre-judgment interest, court costs and attorney's fees." *See* Complaint [DE 1], attached hereto as Exhibit "B."

14. MAZZINI also asserts that "[p]ursuant to the August 10, 2009 Agreement Defendant promised to pay $2000.00 per day as a reasonable loss of use damages for failing to make the required repairs." *See* Complaint [DE 1], paragraph 8, attached hereto as Exhibit "B."

15. Attached to the Complaint as Exhibit "A" was Plaintiff's certified Spanish-into-English translation of the August 10, 2009 Agreement. *See* Plaintiff's Certified Translation of Agreement, attached hereto as Exhibit "D."

16. Clause 3 of Plaintiff's certified Spanish-into-English translation of the August 10, 2009 Agreement states, in relevant part:

> If during that time the pertinent repairs are not made, the Distributor shall incur a penalty of US$2,000 per calendar day to be paid to the Buyer, except in the event of force majeure or because during the estimated time the spare parts needed to that end could not be found available in any provider.

*See* Plaintiff's Certified Translation of August 10, 2009 Agreement, attached hereto as Exhibit "D."

## SUMMARY OF THE ARGUMENT

MAZZINI improperly seeks damages which it is not entitled. As set forth in the statement of undisputed material facts, MAZZINI specifically demands damages for a loss as well as liquidated damages. However, these damages are not recoverable under Florida law.

Interestingly, MAZZINI attempts to enforce Clause Number 3 of the Agreement dated August 10, 2009, which calls for a "penalty of US$2,000 per calendar day" as a liquidated damages clause. However, the provision operates as the quintessential penalty clause and is unenforceable under Florida's well-settled law on damages.

It is equally well-settled that loss of use damages is not a compensable item of damages for a recreational or pleasure vessel. Loss of use damages is recoverable for commercial vessels. It is apparent from a cursory review of the official Transcript of British registry that the LADY MANUELA is registered as a "Pleasure Yacht"- not a commercially registered vessel. The LADY MANUELA is not registered as a commercial vessel with the Virgin Islands Shipping Registry, and as such, MAZZINI is prohibited from recovering loss of use damages as a matter of law

In light of the aforementioned, QUALITY YACHTS respectfully moves this Hon. Court for an order granting partial summary judgment in favor of QUALITY YACHTS and against MAZZINI's improper claims for loss of use and liquidated damages.

## MEMORANDUM OF LAW

**I.)   STANDARD OF REVIEW**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial responsibility of

showing the Court, by reference to the record, that there are no genuine issues of material facts to be decided at trial. *See Celotex Corp. v. Catrett*, 477 317, 323 (1986). Once the initial burden is met, the non-moving party must go beyond the pleadings and come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This well-settled standard is equally true when considering a motion for partial summary judgment as to damages. *See generally* Fed. R. Civ. P. 56(c); *In Re Southeast Banking Corp.*, 69 F. 3d 1539, 1551 (11th Cir. 1995)(recognizing that summary judgment is an appropriate mechanism to narrow the scope of a plaintiff's case); *MCI Worldcom Network Serv., Inc. v. Mastec, Inc.*, 2003 WL 25729927 (S.D. Fla. 2003)(applying the same standard in considering a partial motion for summary judgment on the viability of liquidated damages).

## II.)   PLAINTIFF'S CLAIM FOR LIQUIDATED DAMAGES IS NOT RECOVERABLE AS A MATTER OF LAW.

### A.)   PENALTY CLAUSE

Florida law and policy unmistakably mandates that a liquidated damages clause which operates to penalize a breaching party is <u>not</u> enforceable. *See generally Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F. 3d 1347, 1351 (11th Cir. 2000) (citing *Lefemine v. Baron*, 573 So. 2d 326, 328 (Fla. 1991)). To that end, liquidated damages clauses which operate as a penalty are improper and unenforceable. *See generally Resnick*, 227 F. 3d at, 1351 (11th Cir. 2000); *See also Hutchison v. Tompkins*, 259 So. 2d 129, 130 (Fla. 1972) (reiterating that when a liquidated damages provision in a contract is in essence a penalty it must not be enforced); *Secrist v. Nat'l Serv. Indus., Inc.*, 395 So. 2d 1280 (Fla. 2d DCA 1981). A liquidated damages clause used to compel compliance or to deter a party from breaching the contract have consistently been held unenforceable by Florida courts. *See MCA Television Ltd. v. Public Interest Corp.*, 171 F. 3d 1265, 1271 (11th Cir. 1999).

7

Whether the liquidated damages provision is an unenforceable penalty is a question of law appropriately determined by this Honorable Court.  *See, e.g., Ruckelshaus v. Broward County School Board,* 494 F.2d 1164 (5th Cir. 1974)*; Pub. Health Trust of Dade County v. Romart Const., Inc.*, 577 So. 2d 636, 637-38 (Fla. 3d DCA 1991).  In order to determine the enforceability of a liquidated damages clause, a court is to apply a two-prong test:

> (1) the damages consequent upon a breach must not be readily ascertainable; and
> (2) the sum stipulated must not be grossly disproportionate to the damages reasonably expected to follow from the breach.

*See, e.g., Resnick*, 227 F. 3d at 1350; *Lefemine v. Baron*, 573 So. 2d 326, 328 (Fla. 1991).  To be enforceable, the liquidated damages clause must satisfy <u>both</u> requirements.  *See generally Id.* (holding the liquated damages clause unenforceable for failing the second requirement).  Further, Florida's policy dictates that when there is doubt as to whether a provision is a penalty or a proper liquidated damages clause, "the tendency is to courts is to construe a provision for payment of an arbitrary sum as a penalty rather than one for liquidated damages." *Everbank v. Fifth Third Bank*, 2012 WL 3277110 at *6 (M.D. Fla. 2012); *Goldblatt v. C.P. Motion, Inc.*, 77 So. 3d 798, 801 (Fla. 3d DCA 2011).

In regards to the first prong, a court must intitially determine whether damages consequent from a breach could have been readily ascertainable at the time the contract was entered into.  *See, e.g., Lefemine v. Baron*, 573 So. 2d 326, 328 (Fla. 1991).  Readily ascertainable does not require preciseness as "preciseness is not the legal standard." *Goldblatt*, 77 So. 3d at 801.  Instead, the standard requires only that actual damages be susceptible of ascertainment by some known rule or pecuniary standard.  *See North Beach Investments, Inc. v. Sheikewitz*, 63 So. 2d 498, 499 (Fla. 1953).  If the Court finds that damages were readily ascertainable, the liquidated damages clause is to be construed as a penalty and is unenforceable.

If a court finds that the damages were not readily ascertainable, then the court must determine whether the clause satisfies the second - prong of its inquiry: that the sum called for in the clause is not grossly disproportionate to the damages reasonably expected to follow from the breach. *See Resnick*, 227 F. 3d at 1350. The primary factor is whether the liquidated sum set forth in the clause is just compensation for damages resulting from the breach. *See North Beach Investments, Inc.* 63 So. 2d at 499. A party may not use a liquidated damages provision to secure greater damages in the event of a breach than contract law would normally allow. *MCA Television Ltd. v. Public Interest Corp.*, 171 F. 3d 1265, 1271 (11th Cir. 1999).

Binding precedent dictates that a liquidated damages clause fails to pass the second-prong when a clause does not apportion damages based on the different failures of the defendant; in other words, whether substantial or only minor improvements were incomplete. *See Resnick*, 227 F. 3d at 1351-52 (vacating the district court's award of liquidated damages). In *Resnick*, the subject agreement called for $100 per day plus cost and fees for delay in completion of the contracted construction. *Id.* at 1339. The court found that the subject provision was a penalty and, therefore, not enforceable. *Id.* at 1352. In so holding, the court found it dispositive that "[t]he . . . agreement does not apportion liquidated damages based on the different accommodations not completed; [d]efendant is subject to the same penalty whether substantial or only minor improvements are incomplete." *Id.* at 1351

In the instant case, MAZZINI seeks to enforce the $2000.00 per day penalty set forth in Clause Number 3 of the Agreement dated 10 August 2009.Specifically, the clause at issue states:

> **If during that time the pertinent repairs are not made, the Distributor shall incur a penalty of US$2,000 per calendar day to be paid to the Buyer**, except in the event of force majeure or because during the estimated time the spare parts needed to that end could not be found available in any provider.

*See* Agreement, Clause 3, attached hereto as Exhibit "D" (emphasis added).

9

Apply the aforementioned to the undisputed facts of the case at hand; it is readily apparent that the clause at issue is an unenforceable penalty clause. The subject provision fails both of the required prongs; (1) the amount of damages from a consequent breach was readily ascertainable, and (2) the sum stipulated is grossly disproportionate to the damages reasonably expected to follow from a breach. As such, MAZZINI is not entitled to liquidated damages as a matter of law.

  *a.)*  *Damages were readily ascertainable*

The liquidated damages provision at hand fails the first prong of the test because the amount of damages from a potential breach, if any, were readily ascertainable. *See generally Resnick*, 227 F. 3d at 1350; *Goldblatt*, 77 So. 2d 801 (holding the liquidated damages clause unenforceable because the damages were readily ascertainable). The Agreement at issue called for repairs to the subject motor vessel. Pursuant to the Agreement, QUALITY YACHTS agreed to address the items enumerated in the list attached to the subject Agreement. As such, the potential damage arising from a "breach of agreement" for failing to complete a repair item would simply be the reasonable cost to subsequently repair and/or replace the item.

Hypothetically speaking, if the Defendant did not address/replace the windshield brushes as called for in item 57 of the list, the amount of actual damages would be the cost to subsequently have the windshield brush fixed/replaced. *See* Agreement dated August 10, 2009, number 57, attached hereto as Exhibit "D."

Such cost would be readily and easily ascertainable with pre-repair estimates and/or by post-repair invoices. The penalty of $2000 per day bears no relation to the readily ascertainable actual amount of damages – the actual repair cost. As such, $2000 per day amount set forth Clause Number 3 is an arbitrary amount which operates as nothing more than a deterrent to the

10

breaching party, and is not enforceable as a matter of law. *See, e.g., MCA Television Ltd.*, 171 F. 3d at 1272.

    *b.)*      *The sum stipulated is not a reasonable measure of damages*

Clause Number 3 of the Agreement in question also fails the second-prong of the inquiry because $2,000 per day is grossly disproportionate to the damages reasonably expected to follow from the breach. *See Resnick*, 227 F. 3d at 1350. As in *Resnick*, the provision at hand, Clause Number 3, does not apportion damages based on the level of failure to perform, and must be stricken as a matter of law.

Assuming, *arguendo*, that QUALITY YACHTS breached the Agreement by failing to complete item number 10 of the punch list: VIP Blankets[2]. *See* Agreement dated August 10, 2009, number 57, attached hereto as Exhibit "D." The appropriate measure of damages is clear: the cost of replacing the VIP stateroom blankets. A stringent enforcement of the penalty Clause Number 3 would allow MAZZINI to recover $2,000 a day until the blankets were replaced. Without a doubt, the potential for these widely disproportional damages gives rise to the same concerns expressed by the Eleventh Circuit in *Resnick*; QUALITY YACHTS would be subject to the same penalty whether substantial or only minor repairs were incomplete. Allowing MAZZINI to recover $2,000 a day for every day the VIP Blankets were not replaced clearly demonstrates that Clause Number 3 operates as a penalty, and therefore, is unenforceable as a matter of law.

Perhaps foreseeing the unreasonableness and arbitrariness of the subject penalty clause, MAZZINI cleverly attempts to categorize the $2000 per day as "reasonable" by camouflaging the damages sought in Clause Number 3 "as a reasonable loss of use damage." *See* Complaint [DE 1], paragraph 8, attached hereto as Exhibit "D." However, even a cursory review of

---

[2] The VIP refers to stateroom aboard the Subject Vessel.

Plaintiff's own certified translation of the Agreement reveals that the liquidated damages provision bears no relation to loss of use damages.  The relevant clause, Clause Number 3, is devoid of any mention of loss of use and specifically calls for a "**penalty**" of US$2000 per calendar day to be paid to the Buyer. *See* Agreement, Clause 3, attached hereto as Exhibit "D" (emphasis added).

In sum, MAZZINI is not entitled to liquidated damages as a matter of law because the clause at issue is an unenforceable penalty clause.  Any damages arising from a purported breach would have been readily ascertainable at the time of contracting.  In addition, the arbitrary amount of $2000 per day bears no relation, much less a reasonable relation, to the damages reasonably expected to follow from an alleged breach of the Agreement dated 10 August 2009.  Consequently, summary judgment is appropriately granted against Plaintiff's claim for liquidated damages.

**III.) PLAINTIFF'S CLAIM FOR LOSS OF USE DAMAGES IS NOT RECOVERABLE AS A MATTER OF LAW.**

**A.) LOSS OF USE**

It is well recognized that the loss of use of a private pleasure boat is not generally a compensable item of damages.  *See, e.g., The Conqueror*, 166 U.S. 110 (1897); *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F. 3d 1373, 1376 (11th Cir. 2000).  That is, loss of use damages is only recoverable when profits have actually been, or may be reasonably supposed to have been, lost.  *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F. 3d 1373, 1376 (11th Cir. 2000).

Stated differently, to recover loss of use damages a plaintiff must prove, with reasonable certainly, that profits were lost or were reasonably supposed to have been lost. *See Central State Transit & Leasing Corp.*, 206 F. 3d at 1376.

As explained by the Supreme Court, it is not the mere inconvenience arising from an inability to use the vessel that for the purpose of pleasure that entitles the owner to loss of use damages; "there must be a loss of profits in a commercial sense." *See The Conqueror*, 166 U.S. at 133. The owner of a non-commercial vessel cannot make the requisite showing of lost profit because a non-commercial motor yacht is prohibited from transporting or carrying passengers for hire. *See generally Finkel v. Challenger Marine Corp.*, 316 F. Supp. 549 (S.D. Fla. 1970), *distinguished on other grounds* (stating that a private pleasure registered yacht was prohibited from transporting or carrying passengers for hire). This is consistent with Florida's take on loss of use damages. *See MCI Worldwide Network Service, Inc.,* 2003 WL 25729927 at *6 (citing to *Central State Transit & Leasing Corp.*, 206 F. 3d at 1376 for Florida's position on loss of use damages of a pleasure boat).

Notwithstanding the well-established law on loss of use damages, MAZZINI seeks loss of use damages in the case at bar. In the *ad damnum* clause of its Complaint, MAZZINI specifically seeks loss of use damages. Further, MAZZINI curiously attempts to represent that pursuant to the Agreement QUALITY YACHTS promised to pay $2,000.00 per day as a reasonable loss of use damages. *See* Complaint, paragraph 8, attached hereto as Exhibit "B." However, as mentioned above, a cursory review of the Agreement reveals that it is devoid of any reference to loss of use damage. *See* Agreement dated August 10, 2009, attached hereto as Exhibit "D."

The application of the aforementioned precedent to the undisputed facts of the case at bar establishes that MAZZINI is not entitled to loss of use damages as a matter of law.  The evidence unambiguously establishes that the LADY MANUELA is a vessel registered with the Virgin Islands Shipping Registry as a "Pleasure Yacht."  *See* Transcript of British Registry, attached hereto as Exhibit "C."  The LADY MANUELA is not a registered as commercial vessel.  Consequently, it falls squarely within the ambit of the prohibition against loss of use damages for a private pleasure/non-commercial vessel. *See, e.g., The Conqueror*, 166 U.S. at 133; *Central State Transit & Leasing Corp.*, 206 F. 3d at 1376.  Therefore, MAZZINI is not entitled to loss of use damages as a matter of law, and summary judgment should be granted.

WHEREFORE, Defendant, QUALITY YACHTS, C.A., respectfully requests this Honorable Court enter Partial Summary Judgment against MAZZINI TRADING, LTD.'s claims for liquidated damages and loss of use damages, and thereby limiting Plaintiff's damages, if any, to actual damages and any other further relief this Court deems just and proper.

Respectfully submitted this 25th day of January, 2013.

        PERRY & NEBLETT, P.A.
        Attorneys for Plaintiff
        2550 South Bayshore Drive
        Suite #11
        Miami, Florida 33133
        Telephone: (305) 856.8408
        Fax:      (305) 856.8409

        By:  */s/James H Perry, II*
            JAMES H. PERRY, II
            Fla. Bar No.: 991591
            perry@martimeattorneys.com
            GINO J. BUTTÓ
            Fla. Bar No.: 98462
            gino@maritimeattorneys.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 25th day of January, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By: */s/ Gino J. Buttó*
            Gino J. Buttó
            Fla. Bar No.: 991491
            gino@maritimeattorneys.com

## SERVICE LIST

**Mazzini Trading, LTD, a foreign corporation v. Quality Yachts, C.A., a foreign corporation**

LEVINE & PARTNERS, P.A.
Attn. Allan S. Reiss, Esq.
asr@levinelawfirm.com
1110 Brickell Avenue, 7th Floor
Miami, Florida 33131
Tel:  (305) 856.8408
Fax: (305)856.8409

Attorneys for Plaintiff


James H. Perry, II
perry@admiraltylawyers.com
Gino J. Buttó
gino@maritimeattorneys.com
PERRY & NEBLETT, P.A.
2550 South Bayshore Drive
Suite 11
Miami, Florida 33133
Tel:  (305) 856.8408
Fax:  (305) 856.8409

Attorneys for Defendant